IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KANDI ARNHOLD *et al.*,<br><br>               *Plaintiffs*,<br>v.<br><br>THE UNITED STATES,<br>               *Defendant*. | Case No. 19-1407L<br><br>Judge: Thompson M. Dietz |

## JOINT STATUS REPORT

Pursuant to this Court's September 10, 2024 Order (Dkt. 116), the Parties submit this joint status report addressing the discovery of medical records associated with those bellwether Plaintiffs who identified a medical diagnosis or treatment in response to the United States' Interrogatory No. 20. Although the Parties have different views as to the sufficiency of Plaintiffs' production, they ultimately agree that the schedule set forth in the September 9, 2024 Joint Status Report (ECF No. 114) remains appropriate, and they intend to adhere to the following deadlines:

| Event | Date |
|---|---|
| Deadline for both parties' opening expert reports | November 8, 2024 |
| Deadline for both parties' responsive expert reports | December 20, 2024 |
| Telephonic status conference | A date and time convenient to the Court. |

**Plaintiffs' Position**

The United States requested, and Plaintiffs agreed to seek from their medical providers, records responsive to the United States' Request for Production No. 23, as identified in the parties September 9 Joint Status Report (Dkt. 114). By September 6, 2024, the applicable bellwether Plaintiffs formally requested such records from their providers, and Plaintiffs' counsel expended significant time and resources following up on the records requests.

1

All medical providers eventually responded to Plaintiffs' records requests, although often only after repeated follow-ups via phone and email. Plaintiffs ultimately obtained medical records for eight of the eleven designated bellwether Plaintiffs. After reviewing the records, Plaintiffs' produced to the United States on a rolling basis those records that were responsive and not subject to a claim of privilege.

Despite diligent efforts, Plaintiffs were unable to obtain records from four medical providers. First, one provider stated that they had no responsive records to produce. Second, a licensed psychotherapist refused to provide records, citing privilege, relevancy, and confidentiality concerns. Despite multiple discussions with the provider, Plaintiffs' counsel could not secure the requested documents, which remain outside Plaintiffs' possession, custody, and control. Third, another provider demanded a fee of $796.38 before releasing the records. Plaintiffs requested that the United States cover the fee (and provided the Government a link to pay the fee), but the Government declined to do so. Finally, a fourth provider cited internal delays in their records department and was unable to estimate when the records request would be processed or mailed. However, the bellwether Plaintiff in this final instance was able to access certain responsive records through her online patient portal, which Plaintiffs promptly produced to the United States. Plaintiffs will continue to produce any additional records immediately upon receipt.

The United States argues that Plaintiffs "are in violation of the Court's September 10, 2024 Order by accepting their medical providers' refusal to produce records and by failing to pay production fees for which they could seek reimbursement from the United States under the Uniform Relocation." This is plainly not true. Plaintiffs made diligent efforts to obtain medical records from the identified providers and were largely successful. However, as anticipated, some

records could not be obtained through no fault of Plaintiffs who do not control the third-party medical providers.

To be clear, the United States' objections involve only three sets of medical records for just two bellwether Plaintiffs. For the first set of records, Plaintiffs' counsel confirmed with the provider that no records exist, and confirmed with the bellwether Plaintiff that she visited the provider at the applicable facility for the relevant condition within the time period of the request. No responsive records therefore exist, and Plaintiffs have done all they can in this regard.

As to the second set, the medical provider, a licensed psychotherapist, refused to provide the records, citing privilege, relevance, and confidentiality concerns. Plaintiffs' counsel made multiple attempts to secure these records, explaining to the provider that (1) claims of psychotherapist-patient privilege should be addressed by Plaintiffs' counsel, (2) the records were specifically responsive to a Court order, which was shared with the provider, and (3) a protective order was in place to ensure confidentiality. Despite these assurances, the provider still declined to release the records and provided a letter stating that fact, which Plaintiffs' counsel furnished to the United States. Again, there was nothing further Plaintiffs could do.

For the third set of records, the medical provider imposed an excessive fee of $796.38 for release. Plaintiffs believe that this undue expense for medical records of minimal relevance to this Fifth Amendment Takings Clause case should be borne by the party demanding the records be obtained—the United States. *See Osage Tribe of Indians of Oklahoma v. United States*, 87 Fed. Cl. 338, 340 (2009) ("The court is given great flexibility to order … to adjust the timing of discovery and apportion costs and burdens in a way that is fair and reasonable." (quoting *Marens v. Carrabba's Italian Grill, Inc.,* 196 F.R.D. 35, 37–38 (D.Md.2000)). Moreover, these documents are not in Plaintiffs' possession but are held by a third-party provider, from whom the United States

3

could have directly requested them. Plaintiffs further instructed the United States on how it could pay the fee for the records to be released. The United Stated refused to pay.

Overall, given these circumstances, Plaintiffs respectfully submit that it would be wholly inappropriate, as the United States suggests, to preclude Plaintiffs testimony at trial or draw adverse inferences based on the unavailability of these three sets of records.

**Defendant's Position**

The United States has received responsive records from 8 of the 11 bellwether Plaintiffs to which the Court's September 10, 2024 Order ("Discovery Order") (ECF No. 115) applied. One Plaintiff's provider indicated that no relevant records exist, and another Plaintiff's provider refused to provide relevant records. For that same bellwether Plaintiff, Plaintiffs also refused to provide records for which another provider requested payment of a fee.

The United States conferred with Plaintiffs about their failure to produce these records, which are: (1) are responsive to the United States' Requests for Production; and (2) have been compelled by the Court. Plaintiffs, however, have taken the position—without any authority—that they have no obligation to ensure their medical providers comply with Discovery Order and that the United States must pay the medical providers' fees for producing the responsive, Court-ordered records. As to the first, the Discovery Order plainly contemplates that Plaintiffs "identify and obtain the responsive records from their respective medical providers." ECF No. 115 at 3. Despite their protestations to the contrary, Plaintiffs do not indicate that they informed the providers that release of the records is *required* under Washington Code Section 70.02.080—the very provision Plaintiffs' counsel referenced during argument on the United States' motion to compel. As to the second, in federal litigation, "the presumption is that the responding party must bear the expense of complying with discovery requests…" *Oppenheimer Fund, Inc. v.*

*Sanders*, 437 U.S. 340, 358 (1978).  Indeed, this is particularly so given Plaintiffs could arguably seek reimbursement for these costs from the United States under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c), if they meet statutory requirements.  Whether Plaintiffs believe the records are of "minimal relevance" is of no moment, particularly because this Court has held to the contrary.  The United States therefore maintains that Plaintiffs are in violation of the letter and spirit of the Discovery Order by accepting their medical providers' refusal to produce records and by failing to pay production fees for which they could seek reimbursement from the United States under the Uniform Relocation.  Nonetheless, in the interest of timely proceeding with this litigation in an efficient manner, the United States does not intend to move to compel compliance with the Discovery Order.

However, to the extent that Plaintiffs have failed to provide records which this Court deemed "relevant and proportional to the needs of the case," Discovery Order at 3, the United States reserves the right to move to preclude testimony not supported by records that were within Plaintiffs' ability to obtain, and/or to request that the Court draw adverse inferences from Plaintiffs' failure to do so.  *See Slattery v. United States*, 46 Fed. Cl. 402, 404 (2000).

Dated: October 25, 2024

Respectfully submitted,

*/s/ Roger Marzulla*
Roger J. Marzulla
Nancie G. Marzulla
Mollie A. Jackowski
MARZULLA LAW, LLC
1150 Connecticut Avenue, NW
Suite 1050
Washington, DC 20036
 (202) 822-6760
roger@marzulla.com
nancie@marzulla.com

mollie@marzulla.com

Stephen E. Morrissey
Jordan Connors
Jenna G. Farleigh
Tanner Laiche
SUSMAN GODFREY LLP
401 Union St, Suite 3000
Seattle, WA 98101
Tel: (206)-516-3880
Fax: (302) 516-3883
smorrissey@susmangodfrey.com
jconnors@susmangodfrey.com
jfarleigh@susmangodfrey.com
tlaiche@susmangodfrey.com

*Counsel for Plaintiffs*

TODD KIM
Assistant Attorney General

*/s/ Gregory Cummings*
Gregory Cummings
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
150 M Street, NE
Washington, D.C. 20002
Tel: (202) 616-4119
Fax: (202) 305-0506
Email: Gregory.cumming@usdoj.gov

*Counsel for the United States*